UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

CELINA APPELWHAITE,

        Plaintiff,

   -against-

JO ANNE B. BARNHART,
Commissioner of Social Security,

        Defendant.

------------------------------------------------------------------ X

NOT FOR PUBLICATION
**MEMORANDUM AND ORDER**

05-CV-1470 (CBA)

Plaintiff Celina Appelwhaite has brought suit pursuant to 42 U.S.C. § 405(g), claiming that she is entitled to a higher rate of retirement benefits than she currently receives and that she is entitled to retroactive payments under Title II of the Social Security Act (the "Act"). Following a hearing and an extensive examination of the record, Administrative Law Judge ("ALJ") David Z. Nisnewitz determined Mrs. Appelwhaite had not presented sufficient evidence to conclude that the retirement benefits paid to her were incorrect. The defendant has moved for judgment on the pleadings and, for the reasons set forth below, this Court finds that substantial evidence supports the ALJ's determination and grants defendant's motion.

**I.  Background**

Mrs. Appelwhaite turned 65 on November 29, 1995 and became eligible to receive retirement benefits when she retired in July 1996. A series of mistakes and misunderstandings has led Mrs. Appelwhaite to believe that she has been underpaid by the Social Security Administration ("SSA" or "agency") since 1996.

First, in July 1996, the SSA erroneously sent Mrs. Appelwhaite a check for $6460,

1

believing that she was owed benefits dating from November of 1995, when she was in fact still working. Mrs. Appelwhaite promptly returned the check. (Tr. at 68-71.) In August 1996, the SSA informed Mrs. Appelwhaite that it had failed to deduct her Medicare premiums from her benefit payments for July through October 1996 and that it was therefore deducting $170 from her October 1996 benefit payment. The SSA also informed her that her future monthly payments would be reduced by the amount of her Medicare premium. (Tr. 74-75.) In February 1997, the SSA informed Mrs. Appelwhaite that she had not been credited for the months that she worked past the age of 65, sent her a lump sum check, and informed her that her monthly benefits would increase. (Tr. 78-79.) In April 1997, the SSA informed Mrs. Appelwhaite that she had been underpaid since 1996, sent her a lump sum check for retroactive payments, and informed her that her monthly benefits would increase. (Tr. 80-81.) In September 1997, the SSA informed Mrs. Appelwhaite that her benefits had been recalculated to incorporate her 1996 earnings and sent her a lump sum payment for retroactive payments based upon this increase. (Tr. 86-87.) The next day, the SSA informed Mrs. Appelwhaite that it had erroneously overpaid her by $2114 and that it would withhold from her monthly payments. (Tr. 88-91.) However, in June 1998, the SSA informed her that it had raised her benefit amount, retroactive to January 1998, that she would receive a lump sum payment and that her monthly benefits would increase. (Tr. 92.)

Given the repeated changes in Mrs. Appelwhaite's benefits, it is not surprising that she was concerned about whether her benefit payments were correct. Thus, on several occasions, Mrs. Appelwhaite requested that the SSA reconsider her benefit determination, asking in particular that her 1996 earnings be included in calculating her benefit amount and that the SSA reconsider its determination that it had it had overpaid her by $2114. (Tr. 83-85, 97, 102-107.)

2

On June 19, 2000, the SSA sent Mrs. Appelwhaite a letter in which it explained how much money she was owed for each month and listed all the payments that she had received. The SSA noted that it had underpaid her by $302 for 1996, but that it had overpaid her by $301 in 1997, for a net underpayment of $1. (Tr. at 110-11.) Mrs. Appelwhaite continued to request that the agency reconsider its determinations as to her benefits. On October 20, 2002, the SSA sent another detailed decision in which it explained exactly the manner in which it had determined the monthly benefits to which she was due, including an explanation of the formulas used to compute indexed earnings and benefit amounts. (Tr. at 117.) The SSA confirmed that it had used her correct 1996 earnings, $36,870.26, to calculate her benefits, that it had increased her benefits to account for those months after the age of 65 in which she continued to work, and that it had increased her benefits to account for her 1997 and 1998 earnings. The SSA also confirmed that she had been underpaid, in the aggregate, by $1. (Tr. at 122-23.) Mrs. Appelwhaite appealed this decision, which, after a hearing, was affirmed by the ALJ. The ALJ's decision became the final decision of the agency, and Mrs. Appelwhaite filed the present suit in this Court.

## II.     Discussion

### A.     Standard of Review

To review the agency's decision, the Court must determine whether the correct legal standard was applied, see Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999), and whether the decision is supported by substantial evidence, see 42 U.S.C. § 405(g); Brown v. Apfel, 174 F.3d 59, 61-62 (2d Cir. 1999). Substantial evidence is "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 401 (1971), and requires enough evidence that a reasonable person "might

accept as adequate to support a conclusion," Brown, 174 F.3d at 62-63. If there is substantial evidence to support factual findings, they are conclusive and must be upheld. 42 U.S.C. § 405(g); Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996).

**B.     Analysis**

Upon a thorough review of all the records in this case, it is clear that in the aggregate, Appelwhaite was paid all of the benefits due to her. In the June 19, 2000 decision, the SSA indicated to Appelwhaite what benefits were due to her through that date and compared those amounts against how much she had been paid. In the October 20, 2002 decision, the SSA explained to Appelwhaite exactly how those benefits were calculated.

As the agency explained in its October 20, 2002 decision, Appelwhaite's benefits were calculated based upon indexed earnings and a complex formula. (Tr. at 115-23.) For example, effective January 1997, when her 1996 earnings were included, Appelwhaite was entitled to primary benefits of $794.30 based upon averaged indexed earnings of $1781.[1] Her primary insurance benefits are 90% of the first $387, plus 32% of the excess up to $2333, or in this case, 90% of $387 plus 32% of $1394, totaling $794.30. After adding cost of living increases for each year[2] and a credit of .125 percent for each of the 8 months at which Appelwhaite was at full retirement age but continued to work, Appelwhaite was entitled to approximately $938 a month,

---

[1]   That is, over the last forty years, Appelwhaite had indexed earnings totaling $748,397.77 in the highest 35 years, including $36,870.26 for 1996, for an average indexed monthly salary of $1781.

[2]   A yearly cost of living increase becomes effective in December of each year. 20 C.F.R. § 404.273.

effective January 1997.[3] In December 1997, a cost of living increase of 2.1% raised Appelwhaite's monthly benefits to $957.70. These numbers are accurately reflected in the June 19, 2000 reconsideration decision, which indicates that Appelwhaite was owed $937.80 a month for January 1997 to November 1997, and $957.70 for December 1997. In 1998, to accommodate for 1997 earnings, Appelwhaite's benefits were increased to approximately $960 a month for January through November. For December 1998, they were increased to $972.50 based upon a cost of living increase. These numbers, as well as those for 1999, are also accurately reflected in the June 19, 2000 reconsideration decision.

Furthermore, the June 19, 2000 reconsideration decision indicates that although she was underpaid in certain months and years, Appelwhaite was actually paid all the benefits owed to her. According to that decision, in 1996, Appelwhaite was entitled to $860.50 per month from July to November of 1996 and $884.80 for December of 1996, for a total of $5187.30 in benefits for 1996. For that year, Appelwhaite was paid benefits of $298.80 in the form of Medicare premiums, deducted from monthly checks, and was additionally paid checks of $810 for the months of July and August, $640.50 for September, $768 for October and November, and $790 for December. Thus, Appelwhaite was paid a total of $4586.50 in checks, plus Medicare premiums of $298.80, an underpayment of $302. (Tr. at 110-11, 390.)

However, the SSA compensated for that underpayment in 1997. For 1997, Appelwhaite was owed $937.80 per month from January to November of 1997 and $956.80 for December of 1997. Appelwhaite was thus entitled to a total of $11,272.60 of benefits in 1997. She was paid checks for $790 and $42 in January, for $796 in February, for $796 and $400 in March, for $841

---

[3] Amounts are rounded down to the nearest 10 cents after each adjustment and monthly benefits are rounded down to the nearest whole dollar. 42 U.S.C. §§ 415(i)(2)(A), (g).

in April through July, for $841 and $256 in August, for $901 in September and October, for $894 and $154 in November, and for $913 in December. She also received Medicare premiums of $525.60. As such, Appelwhaite received total payments of $11,048 plus Medicare premiums of $525.60, resulting in an overpayment of $301. (Tr. at 110-11, 391-92.) Thus, although Appelwhaite's 1996 and 1997 benefits payments were individually incorrect, in the aggregate she was paid all of the benefits owed to her.

Furthermore, Appelwhaite was correctly paid for 1998 and 1999. In 1998, Appelwhaite was due $959.80 monthly for January through November and $972.50 for December, for a total of $11,530.30. Appelwhaite was paid $913 for January through May, a lump sum of $15 in May, $916 for June through November, and $927 in December. Appelwhaite's checks totaled $11,003. Appelwhaite's Medicare premiums totaled $527. Thus, Appelwhaite was correctly paid for 1998. (Tr. at 110-11, 393.) In 1999, Appelwhaite was due $972.50 monthly for January through November and $995.50 for December, for a total of $11,693.00. Appelwhaite was paid $927 for January through Nov and $950.50 for December, totaling $11,147, as well as Medicare premiums of $546. Thus, she was properly paid for 1999. (Tr. at 110-11, 394.)

Appelwhaite remains unconvinced, however, and points to numerous discrepancies in the record. Although the record is understandably confusing, each of these discrepancies can be explained. First of all, Appelwhaite complains that although she was informed that she was owed $860.50 per month for July through November 1996, she never received a check for that amount. However, Medicare premiums are deducted from every check, such that a check received will never equal the entire benefit due. In addition, the SSA appears to have made mistakes when determining Appelwhaite's 1996 and 1997 benefits, although the agency

compensated for these mistakes through a series of lump sum payments.  Finally, on several occasions, the SSA recalculated her benefits retroactively so as to include newly reported earnings, and was therefore obliged to make lump sum payments to correct past underpayment.  Thus, it is not surprising that the amount of Appelwhaite's benefit check was in constant flux.  However, since 1999, when Appelwhaite ceased to report past earnings, her benefits payments have remained fairly constant, aside from the yearly cost of living increase.  (See Tr. at 394-97.)

Appelwhaite also complains that although her benefits began in July 1996, she never received a check in that month.  However, SSI benefits are paid one month in arrears, such that the check received by Appelwhaite in August 1996 was for those benefits which were due for the month of July.  Thus, Appelwhaite was paid for July of 1996.  That benefits are paid a month in arrears also explains another set of discrepancies upon which Appelwhaite relies.  In particular, the payments listed for each year by the SSA in its reconsideration decision of June 19, 2000 do not match the payments listed on the payment worksheet that the SSA provided to Appelwhaite.  For example, the June 19, 2000 decision indicates that in 1996, Appelwhaite was entitled to $5187.30 in benefits and was paid a total of $4586.50 in checks plus $298.80 in Medicare premiums.  In contrast, the 1996 payment worksheet indicates that she was entitled to $4302.50, but was paid $3796.50 in checks plus $255 in benefits.  (Tr. at 390.)  However, the numbers on the payment worksheet correspond to the date of payment, not the month for which the payment was owed.  Thus, the payment worksheet shows benefits paid in August 1996 through December 1996, which actually correspond to the benefits owed for July 1996 through November 1996.  In order to determine the total benefits paid for 1996, one must add the payment made in January 1997, which corresponds to benefits owed for December 1996.  In January 1997, Appelwhaite

was paid a check for $790 and Medicare premiums of $43.80. (Tr. at 391-92.) Thus, according the payment worksheets, Appelwhaite was paid $4586.50 in checks plus $298.50 in Medicare premiums for 1996, just as indicated in the reconsideration decision of June 2000. Indeed, when adjusting for this timing difference, all the information on the payment worksheets corresponds to the information in the June 19, 2000 reconsideration decision.

Appelwhaite is also under the impression that her 1996 earnings were never properly included in the determination of her benefits and that the SSA erroneously used earnings of $34,333. However, as explained in the October 20, 2002 reconsideration decision, the SSA included 1996 earnings of $36,870.26 in calculating her benefits retroactive to January 1997. (Tr. at 119-121.) Although at one point the SSA referenced the number $34,333 in connection with her 1996 earnings, that number was used to determine her work deductions, not in determining her indexed earnings.

Finally, Appelwhaite believes that $2,184 was incorrectly withheld from her benefits payments in 1997. Indeed, in September 1997, the SSA informed Appelwhaite that it had erroneously overpaid her by $2,114 and that it would withhold from her monthly payments in order to compensate. (Tr. 88-91.) The SSA informed Appelwhaite that withholding would begin with the check received in December 1997, which corresponds to the benefits due for November 1997, and that she would receive $901 a month until withholding began. In December 1997 the SSA only paid Appelwhaite $894, seemingly withholding from her benefits. However, the SSA paid Appelwhaite $913 a month beginning in January 1998 and did not withhold any more money from her. Adding to the confusion is Appelwhaite's Form 1099 from 1997, which indicates that the "Benefits Paid in 1997" equaled $13,634.60, that the "Benefits

8

Repaid to SSA in 1997" equaled $2,184, and that the "Net Benefits for 1997" equaled $11,450. (Tr. at 413.) It is unclear why this tax form refers to "Benefits Paid" and "Benefits Repaid." However, the "Net Benefits for 1997" corresponds to the payment worksheets, which, as explained above, correspond to the amounts calculated by the SSA in its June 19, 2000 reconsideration decision, adjusted for the fact that payments are made a month in arrears. Thus, although the reference to the sum of $2,184 on this tax form is confusing, an independent analysis of the payments actually made to Appelwhaite indicates that she was correctly paid for 1997 and 1998.

In sum, this Court understands why Appelwhaite has been confused as to whether she has been properly paid the benefits owed to her. However, Appelwhaite has not presented any evidence to indicate that the SSA miscalculated her retirement benefits or otherwise underpaid her.

## **CONCLUSION**

For the reasons set forth above, this Court finds that substantial evidence supports the ALJ's determination that Appelwhaite has not demonstrated that her benefits were miscalculated or that she was underpaid by the SSA. Accordingly, this Court grants the defendant's motion for judgment on the pleadings.

SO ORDERED

Dated: Brooklyn, New York
       November 21, 2006

                                        Carol Bagley Amon
                                        United States District Judge